UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

DAVID J. MCMILLAN,                  Case No. 2:25-cv-00032

     Plaintiff,                  Hon. Paul L. Maloney
                                                              U.S. District Judge

v.

STATE OF MICHIGAN, et al.,

     Defendants
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

*Pro se* Plaintiff David J. McMillan filed this prisoner civil rights complaint under 42 U.S.C. § 1983 against several Defendants. (ECF No. 1.) McMillan indicates that he is a former prisoner, and he provides a prisoner number. (*Id.*, PageID.1, 7.) McMillan requests that the Court "restore my rights as a human being" and investigate State of Michigan employees for Medicaid fraud, and conspiracy to commit murder or attempted murder. (*Id.*, PageID.4.) McMillan requests a jury trial and $81.2 billion dollars in U.S. currency or gold. (*Id.*)

First, McMillan's complaint violates Fed. R. Civ. P. 8a because it is a narrative of life events, rather than a short and plain statement showing that he is entitled to relief. The rule states that a complaint should be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). McMillan sets forth facts that show that he had a difficult past involving both social issues and for purposes of the subject matter of this complaint – significant medical issues

1

throughout his life.

McMillan's lawsuit is about medical care or lack of appropriate care, and the cost of his treatment. He alleges that Defendants are involved in fraud and a conspiracy to make themselves wealthy based upon Plaintiff's medical treatment costs. The Court is sympathetic to the difficulties that McMillan has faced while dealing with his medical issues and the cost of care. He paints an overwhelming picture of the difficulties that many people with health issues must overcome while living on limited incomes. Unfortunately, this lawsuit cannot solve McMillan's health care and financial needs. Accordingly, because McMillan fails to assert actionable federal or constitutional claims against the Defendants, it is respectfully recommended that the Court dismiss the complaint.

**II. Factual Allegations.**

McMillan asserts that beginning the day he was born in 1961, he has been continually harmed by medical professionals who have treated him unfairly, violated his rights, and overcharged him for medical care and prescription drugs. McMillan sues three categories of Defendants: (1) the State of Michigan Attorney General Dana Nessel and Marlow Brown, Director of the State of Michigan's Department of Licensing & Regulatory Affairs Department, (2) Charles Rose, Director of the Luce County Department of Health & Human Services; Luce County Patient Advocate Peramski; and Luce County Sheriff Peterson, and (3) private actors consisting of the Helen Johnson, CEO of the Helen Newberry Joy Hospital (HNJH); Dr. Maygar; Dr. Rao; Dr. Gill; Dr. Webb; Snyder Drugs & Pharmacy; Manager Klosemeyer;

Bookkeeper Doe; Hometown Pharmacy; and Manager DeMerse.

McMillan asserts that these "powerful state and licensed so called professionals" caused him duress and cruel and unusual punishment due to medical brutality. (*Id.*, PageID.7.) McMillan says that medical professionals charge whatever they want "just like the mafia." (*Id.*) McMillan says that he contracted hepatitis soon after birth through an unnecessary blood transfusion simply so the doctor could make more money. McMillan alleges that this is done "at every Birth in this nation everyday." (*Id.*)

He says that he first learned that he had hepatitis when he was eight years old, after his sister pushed him through a glass window. He received 2 pints of blood and the "Licensed Doctor Told my Mom right in front of me. Nothing was done at that time." (*Id.*, PageID.8.) McMillan states at age 17, he wanted to become a boxer, but when he tried to join the Livonia Boxing Club, he was told that he needed to pass a blood test. (*Id.*) Instead, he had to become a bouncer at a bar and cut lawns at a cemetery. (*Id.*) McMillan blames the State of Michigan as "the Leaders of These Organized Forces" for causing him this duress and asserts that this was cruel and unusual punishment. (*Id.*)

McMillan explains that he has been under duress from an early age. He witnessed the death of his grandmother when celebrating his fourth birthday. (*Id.*) He remembers hearing his father state that his grandmother would still be alive if they had not celebrated his birthday. (*Id.*) McMillan alleges that his brother and sister tortured him from the time he was six years old. (*Id.*) McMillan says that in

3

the Sixth grade, he got kicked out of school for fighting and was sent to speak to a doctor employed by the State. (*Id.*) McMillan details an incident where he says that a State physician attempted to sexually assault him at the Northville State Hospital. (*Id.*) He was able to get away and leave the facility. (*Id.*)

McMillan says he lived through the trauma of the Detroit riots in 1967 and the Vietnam war, and he remembers when military officials would visit his neighbors to tell them that their sons had been killed. (*Id.*, PageID.9.) McMillan explains the trouble and difficulties he had in high school, and how he was unfairly charged with armed robbery while his two accomplices were charged with disorderly conduct. (*Id.*) He explains that his accomplices were able to move on and lead successful lives. (*Id.*) He alleges that at age 16, he moved out of his family home and lived on his own. (*Id.*)

McMillan says that when he graduated from high school in 1979, his girlfriend was driving his car when somebody threw something at the car. (*Id.*) He dropped off his girlfriend and then drove back to look for the person who had thrown something. (*Id.*) When he got out of his car, he was stuck in the head by Redford police officers. (*Id.*) McMillan says he was beaten by police officers and they took his dog. (*Id.*) He was found guilty of disorderly conduct and told to stay away from his girlfriend because she was 19 years old and he was only 17. (*Id.*)

McMillan then describes two trips that he made to the St. Mary's Hospital in Livonia, Michigan in the early 1980s, to provide examples of "Another Licensed Doctor making a Fortune off your Misery." (*Id.*, PageID.10.) After he was "carjacked" in 1983, causing $70000.00 damage to his vehicle, he was involved in traffic accident

4

that required two surgeries. (*Id.*) "Again that pain is Very intense. It never goes away." (*Id.*)

McMillan says that he was arrested by an undercover police officer who had a warrant for his older brother Daniel McMillan, because his name was "close enough." (*Id.*) McMillin says that he had a Grand Mal Seizure on the jail floor and almost died until someone called for emergency medical care where he was placed in intensive care in the hospital. (*Id.*, PageID.10-11.) McMillan says that a Redford police officer unplugged him from all the machines and ripped out his catheter before taking him back to the lock-up. (*Id.*, PageID.11.) McMillan says he suffered all day with seizures while there. (*Id.*) He later returned to the emergency department, and the Wayne County jail subsequently covered up the abusive conduct that had occurred. (*Id.*)

Ultimately, after a jury trial, McMillan was convicted of aiding and abetting robbery and sentenced to prison for 7-1/2 to 30 years. (*Id.*) McMillan says he was released from prison in 1992. (*Id.*) McMillan says that he had to lie about his past to get a job, because no one wants to hire an ex-con. (*Id.*) McMillan explains that he includes these facts in his complaint "to show That my God given rights have been violated my entire Life at one time Or another." (*Id.*)

Although McMillan says that he knew he suffered a back injury due to the pain, he first discovered the seriousness of his disability in 2016 after he applied for social security disability. (*Id.*) The Administrative Law Judge wrote in his decision that Plaintiff's back was broken, and 4 discs needed to be replaced. (*Id.*) McMillan says that Defendant Dr. Maygar falsely told him that everything looked great. (*Id.*)

5

McMillan says that he is still in pain today, and Defendant Dr. Rao refused to treat him, causing him to make an appointment with Defendant Dr. Webb. (*Id.*, PageID.12.) Plaintiff says that Defendant Dr. Rao caused him years of harm through cruel and unusual punishment. (*Id.*)

McMillan alleges that sometime between 2007 and 2013, while being treated by Defendant Dr. Maygar, he owed $7000.00 for heart medication to "HNJH." (*Id.*) Plaintiff says that he was paying $10.00 per month to the "UPHP Insurance Company" but Defendant Patient Advocate Peramski, whom Plaintiff alleges is a Luce County employee, informed him that he should not have to pay because he is on Medicaid. (*Id.*) Plaintiff claims that after he had a heart attack or stroke in 2013, that Defendant Peramski told him to get a job. (*Id.*)

McMillan says that at the end of 2013, Defendant Dr. Maygar was fired for giving him heart medication, and he was "given" Dr. Rao as his "New Doctor." (*Id.*, PageID.13.) Dr. Rao, who Plaintiff calls "fake Doctor" asked him at every visit about getting a job.

Plaintiff says that he had "to pay child support to a woman that has two boys by another man" and to cover day care costs and insurance. (*Id.*) He says that the Livingston County Sheriff and Brighton State Police chased him down to get him back into court. McMillan says that this is all intertwined. (*Id.*)

In October of 2016, McMillan says that Defendant Dr. Rao told him to eat bananas and take Ibuprofen. (*Id.*) After that, McMillan says he made an appointment with Defendant Dr. Webb. (*Id.*) According to McMillan, Dr. Webb told

6

him that "'WE' only treat one thing at a time." (*Id.*) Plaintiff says that when he was discharged from the hospital, Defendant Peramski told him to stop by Michigan Works and see if they had any jobs.

McMillan says that his constitutional and civil rights have "been violated so many times." (*Id.*)

McMillan complains about his attempts to obtain social security disability insurance and the difficulties he had through the process. (*Id.*, PageID.14.) He claims that his prescription medications cost $900.00 per month. (*Id.*) McMillan says that in January 2023, he kept telling them he needed something to help him sleep. Defendant Hometown Pharmacy filled his prescription for Amitriptyline even though he had told them he no longer wanted it. He also says that when Dr. Rao prescribed vitamins such as D3, the pharmacy wanted him to pay for them. (*Id.*)

Plaintiff says that "there's money exchanging hands" and Defendants are working together to violate his civil rights. (*Id.*) Plaintiff says that he had prostate surgery on July 22, 2024, and believes that "they Conspired to not treat me because my Court Ordered insurance would not pay. So they Conspired to get me put on Medicaid" to make a lot of money. (*Id.*) Jeannie from Luce County Health and Human Services "told me to just Sign over my Property and I get my insurance back." (*Id.*)

In January 2024, Dr. Rao prescribed Seroquel, which McMillan subsequently learned was to treat a mental health disorder and not the sleeping pill he had requested. (*Id.*) McMillan asserts that he was prescribed this medication because

the doctor could get a check from the drug manufacturer. (*Id.*) Plaintiff alleges that Defendants Dr. Rao and Dr. Gill are partners in crime. (*Id.*, PageID.15.) On March 14, 2024, McMillan learned that the doctor and pharmacist were close friends. (*Id.*) McMillan alleges that Defendant Peramski aided and abetted the doctor by committing Medicaid fraud and profiting from his misery. (*Id.*) In January of 2025, McMillan's back was x-rayed by these same doctors who own the x-ray machine. (*Id.*)

In 2014, McMillan says that he first told Dr. Maygar of his testicular problems and he finally had an ultrasound, but he did not see a urologist until July 22, 2024, the day of his surgery. (*Id.*, PageID.16.) McMillan believes that there is a good chance that the surgery could have been avoided.

McMillan says that when he went to his eye surgery appointment, Dr. Muth read out loud McMillan's medication list, causing two office workers to laugh about his medical issues. (*Id.*) McMillan says that he received two new lenses which initially improved his vision, but his eyes are now getting worse. (*Id.*)

McMillan says that at some point, Dr. Webb called the Luce County Sheriff to visit him for a welfare check. (*Id.*) McMillan believes that this was an attempt to get his property. (*Id.*) McMillan says that he lives on less than $800.00 per month. (*Id.*)

McMillan says that he parked his Jeep at a trail head during the Winter months, but his Jeep was impounded after a Luce County snowplow driver complained. (*Id.*) McMillan cannot get the Jeep back because it is titled in his son's name. (*Id.*, PageID.17.) McMillan claims that these events are all part of the conspiracy against him. He then purchased a truck from a dealer but had nothing

8

but problems with it. (*Id*.)

McMillan visited Dr. Rao and informed him that he was no longer taking his medications because he could not afford them. (*Id*.) Dr. Rao told him that the medications were keeping him alive and that if he did not take his medication, he would die. (*Id*.) McMillan says that Peramski told him to reapply for Medicaid. (*Id*.) When Dr. Rao asked if he was going to reapply for insurance, McMillan replied "no" and left the office. McMillan did get the medications Metroprolol and Oxycodone but had to pay $50.00 to Defendant Synder Drugs. (*Id*.)

When McMillan returned to Synder Drugs to get his blood pressure and pain medications, he was told that they would cost him $748.00 for a 30-day supply. (*Id*., PageID.18.) McMillan immediately informed Luce County Sheriff Peterson about the denial of his rights, but the Sheriff failed to fulfill his duties.

McMillan says that at this point, he is not taking medications because he cannot afford them and that the only thing that he can do is to file this lawsuit. (*Id*.) McMillan says that the Defendants only want money and that they have violated his constitutional and civil rights. (*Id*.) McMillan says that Defendants have also violated the Michigan Consumers Protection Act of 1976. (*Id*.) Plaintiff has attached to his complaint medical records, his social security disability ALJ decision, and photocopies of x-rays. (*Id*., PageID.24-51.)

On February 26, 2025, McMillan was granted *in forma pauperis* status. (ECF No. 6.)

## II. Standard of Law

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any action brought *in forma pauperis* if the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "'probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

In addition, the Court must read Plaintiff's *pro se* complaint indulgently, see *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

### III.    Analysis

#### 1.   Statute of Limitations

The Sixth Circuit has held that dismissal is appropriate under 28 U.S.C. §1915(e)(2) when a complaint bears an affirmative defense such as the statute of limitations and is therefore frivolous on its face. *Fraley v. Ohio Gallia Cty.*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998) ("Where a particular claim is barred by the applicable statute of limitations, it does not present an arguable or rational basis in law or fact and therefore may be dismissed as frivolous under § 1915(e)(2)"); *Day v. E.I. Dupont de Nemours and Co.*, No. 97-6233, 1998 WL 669939, at *1 (6th Cir. Sept. 17, 1998).  Federal courts apply state personal injury statutes of limitations to claims brought under 42 U.S.C. §1983. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See*  Mich. Comp. Laws § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.) (per curiam), *cert. denied*, 479 U.S. 923 (1986); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999).  McMillan filed his complaint on February 19, 2025.  (ECF No. 1.)  Accordingly, any claims that McMillan asserts that accrued prior to February 19, 2022, are barred.

#### 2.   Private Actors

McMillan sues several private actors consisting of the Helen Johnson CEO of the Helen Newberry Joy Hospital, Dr. Maygar, Dr. Rao, Dr. Gill, and Dr. Webb, Snyder Drugs & Pharmacy, Manager Klosemeyer, Bookkeeper Doe, Hometown

11

Pharmacy, and Manager DeMerse. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be fairly attributable to the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be a sufficiently close nexus between the State and the challenged action of the defendant so that the action of the latter may be fairly treated as that of the State itself. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

The fact that a Defendant may receive public funding and is licensed by the state does not render them state actors for purposes of § 1983. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (nonprofit, privately operated schools receipt of public funds did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (allegation that hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law); *Adams v. Vandemark*, 855 F.2d 312, 315–16 (6th Cir. 1988) (fact that nonprofit corporation was funded almost entirely by public sources, and was subject to state regulation, without more, is insufficient to make private entity's

12

decision to discharge employees attributable to state for purpose of § 1983 action).

In the opinion of the undersigned, Defendants Helen Johnson CEO of the Helen Newberry Joy Hospital, Dr. Maygar, Dr. Rao, Dr. Gill, and Dr. Webb, Snyder Drugs & Pharmacy, Manager Klosemeyer, Bookkeeper Doe, Hometown Pharmacy, and Manager DeMerse are entitled to dismissal because they are not state actors, and they cannot be sued under 42 U.S.C. § 1983.

### 3. The remaining State actors

McMillan sues State of Michigan Attorney General Dana Nessel; Marlow Brown, Director of the State of Michigan's Department of Licensing & Regulatory Affairs; Charles Rose, Director of the Luce County Health & Human Services; and Luce County Patient Advocate Peramski, for engaging in a conspiracy against him. McMillan also named Luce County Sheriff Peterson for taking no action after McMillan informed him about the excessive charges for his prescription medications.

First, a civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (*quoting Hooks v. Hooks*, 771 F.2d 935, 943 44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.

*Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

McMillan has failed to allege or explain how the Defendants engaged in a conspiratorial objective by entering into a single plan to deprive him of his rights, nor has he asserted any facts showing that they had spoken or corresponded with each other. Further, McMillan has failed to assert factual allegations that show that the Defendants took overt actions against him in furtherance of an alleged conspiratorial objective. In the opinion of the undersigned, McMillan has failed to allege particular facts that could support a "plausible suggestion of conspiracy." *Id.*

Second, a party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990). McMillan has not alleged how Michigan Attorney General Nessel, Licensing & Regulatory Affairs Department Director Brown, or Luce County Health & Human Services Director Rose had any personal involvement in either his medical care or the costs associated with his medical care and treatment.

Additionally, the Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. In

general, failing to intervene on a plaintiff's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior. *Id.* In the opinion of the undersigned, McMillan has failed to allege active unconstitutional behavior on behalf of either Luce County Patient Advocate Peramski or Sheriff Peterson. McMillan states Peramski failed to either help him or appropriately perform her job duties. McMillan asserts that Peramaski made comments to him that he should try to get a job. McMillan has failed to show that Peramski took any action that could plausibly violate his constitutional rights. Similarly, McMillan alleges that Sheriff Peterson took no action after McMillan informed him that he was being excessively charged for his prescription medications. McMillan's allegations fail to state a claim for relief against the Sheriff.

Finally, McMillan has failed to identify the capacity that he is suing each Defendant. An action against a defendant in his or her individual capacity intends to impose liability on the specified individual, while an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

An official capacity lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Accordingly, it is the opinion of the undersigned that McMillan's 42 U.S.C. § 1983 claims against the Defendants in their official capacity for monetary damages are properly dismissed in accordance with the Eleventh Amendment.

Moreover, it is the opinion of the undersigned, McMillan's conclusory allegations that Defendants engaged in Medicaid fraud are unsupported by fact. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### IV.  State Law Claims

McMillan alleges that Defendants violated the Michigan Consumers Protection Act. (ECF No. 1, PageID.18.) Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those

interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, it is recommended that the Court decline to exercise supplemental jurisdiction over the state law claims.

## V. Recommendation

For these reasons, the undersigned respectfully recommends that the Court dismiss the complaint.

Dated:  March 18, 2025                                        /s/ *Maarten Vermaat*
                                                              MAARTEN VERMAAT
                                                              U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).